You're going to hear the next case before we take a 10-minute recess, and the next case is Paul Martin Sullivan, Jr. v. Liberty Life Assurance Company of Boston, and Mr. Sullivan is here on his own behalf, and Mr. Lee Marcus is here for Liberty Life Assurance, and Mr. Sullivan, are you ready to proceed? Yes, Your Honor, thank you. Before I begin, I would like to say I appreciate the court listening today, and the relief I'm going to request is that the court reverse the district court's order awarding fees against me as counsel, and the district court's denial of my motion to alter the amended judgment. I think you can see very quickly what the issue is, and this is the one I want to get to, and it's simply this. If Congress had intended ERISA's attorney fee shifting provision to apply to counsel for the parties, Congress had specifically to say so. Congress did not. It does not apply to counsel, consequently, and it is embodied in the case law and precedent of this circuit, as well as in the United States Supreme Court in Buchanan. In document 89, which the court has before it, in a three-page basically summary of where we were, that was my motion to alter amend judgment, I timely, within 28 days, asked the court to follow the rule that Congress needs to explicitly include counsel or counsel is not included. I specifically cited Amlong, I cited Buchanan, and so what we are dealing with today is a simple application of the law as it is, not as Liberty would have you change it. Liberty has suggested that ERISA's remedial provisions are expansive and broad, and quite the contrary. Judge Ginsburg, in her incurring opinion in Aetna v. Davila, complained explicitly of the narrowness of these remedial provisions and asked that they had to be changed sooner or later by Congress or somehow by the courts. The remedial provisions began as a narrowing with pilot life, which was the original preemption provision and actually, as I wrote to the earlier court, caught me in 1987. It ruled out bad faith damages under Mississippi insurance law and pointed out that the remedial provisions of ERISA are all you get. You are confined to them. They are not broad at all. And so we have… So this language is pretty broad. The court, in its discretion, may allow a reasonable attorney's fee and costs of action to either party, period. That's Section 1132G1. Is there anything in the statute that says the court can assess attorney's fees against the party? I'm not the party. I was the counsel. That's the whole point. Well, I meant to say against the attorney. I'm having a little difficulty picking up the question, Judge, but if you're saying there's nothing you say you can't, that's contrary to the rule. The rule is that the attorney must specifically be named. Otherwise, it only applies to parties. Liberty Life would like to include counsel for the first time, and this would be a huge change in the jurisprudence of this court and of ERISA. Well, Mr. Sullivan, doesn't a court always have inherent authority to sanction a lawyer for unprofessional conduct during the course of litigation? Two things on that, Judge, yes. And that is it has an inherent authority, but as the court in Davila Villa in the Middle District pointed out, it must be requested by Liberty. Liberty did not cite Davila Villa to the district court. Durrett versus Jenkins in this court says the same thing. And Anlong versus Anlong spent a great deal, in fact, most of its discussions in the need for a hearing and notice. And the counsel that would be sanctioned, I think, is important. You need a hearing if the attorney is being sanctioned pursuant to Section 1927. But do you need a hearing if the attorney is being sanctioned as a part of the court's inherent authority to sanction a lawyer for unprofessional conduct? It's my understanding they are coextensive, Your Honor. If you look at Durrett versus Jenkins Brickyard, that's exactly what it says. If you look at Anlong versus Anlong, I was never given any hearing or notice that I would be sanctioned for unprofessional conduct. It was Liberty that asked that the court award an attorney fee specifically under 1132G. The court specifically cited the Freeman factors, which are the 1132G factors, and it gave an order in Liberty's favor. The Freeman factors all mentioned parties. And I think it's important for the court to take a quick look at the horrible consequences that are spelled out, the catastrophic consequences in In re Crescent City by the Fourth Circuit. An attorney cannot represent his client if he cannot argue the case. And that's essentially what they're saying. It immediately creates an automatic conflict. It creates some sort of obligation for the attorney not to make an argument that he doesn't absolutely know will succeed, which is directly contrary to the ethics rules of this court and of the Florida Bar. The Florida Bar says the attorney must make that conflict, if it's based on the law, must make that argument, even if the attorney believes it won't succeed. He is under an obligation or she is under obligation to make that argument. Now, I think the court was misled by Liberty's not citing Davila Villa and Amlong, which they did not do. They lost Davila Villa precisely on the basis that this court outlaws this kind of activity. It was in violation of the candor to the court, I believe, that is under the ethical rules and the rules of the Florida Bar, since Liberty's counsel made that exact same motion in Davila Villa, lost the exact same motion, knew it was on Amlong, the basis of Amlong, and failed to notify the court, even when it was apparent initially that Sullivan did not know of it. I called it to the court's attention. The court, as Liberty proudly pointed out, denied that motion within one hour's business time. That's the way I put it. I'm confused by the docket in the case, because your client is not represented on appeal. My former client, Judge, yeah. Well, former client. When did that break happen? Two questions. When did that break happen? When did you stop representing the client? After this order. Second question, why does our docket show that you continue to represent the client? That I can't explain. I asked the clerk of court why it showed that, and I don't know. The client discharged me, and that was it. I don't know why it showed that I would represent the client. Okay. I didn't know how to do anything. Did you serve your initial brief on the client? I didn't see where you had served your initial brief on the client. No, the client was not part of my appeal. It was Liberty. Two minutes, counsel. Just to be clear, just correct me if I'm wrong, but your position was you appealed against Liberty, then they cross-appealed to try to get some fees assessed against the former client, your former client. Exactly. So your appeal doesn't really have anything to do with whether fees need to be assessed against your former client. Only to the extent in the backup orders when I said that it cannot be fees assessed to the client for merely arguing the law. The law which I was arguing was precedent of this client in this court, Sheely versus MRI Associates. And it was an argument on the law that Liberty decided it had no basis and I should have known. And it apparently handed the judge a draft that immediately upon Liberty's notice to me, as they put it in its response to the motion for summary judgment, I should have known the case was lost. It was over. Let me ask you another question that relates to one that Judge Wilson asked, which is about the district court's ability to assess fees against you through some other route. Let's assume that I agree with you about your interpretation of ERISA. The insurance company has argued that there are a number of other statutes that would allow these fees to be assessed against you.  They never asked for them, they waived them, and I didn't get any hearing or notice. This is exclusively on the meaning of 1132G, which Liberty wants you to expand. The district court did not impose sanctions on you based on anything other than 1132. That's my understanding. Exactly. They didn't include Rule 11 or any other of the statutes that could be involved in terms of sanctioning an attorney. Absolutely correct, Your Honor. All right. Thank you, Mr. Sullivan. We'll hear from Lee Marcus. Thank you. May it please the court. I'm Lee Marcus of Markson Myers, PA, in Orlando, and I represent Liberty Life Assurance Company of Boston in the appeal as the appellee, as well as in the cross appeal against Ms. Peer. Let me begin by saying that the first issue in our brief relative to jurisdiction and timeliness is not in play any longer. As Mr. Sullivan pointed out in his reply brief, he had miscited a date, which we then looked at, saw the judge sign the order on August 8th, but it was entered on August 9th, and therefore that made the appeal timely. However, the issue of the 1132 G fees against an attorney. That was not preserved by Mr. Sullivan. When we moved for fees, both in the district court, as well as the appellate court, because this case has already been here to the 11th Circuit and it was affirmed on the summary judgment denial on the judgment on the pleadings and the dismissal. We move for fees in the district court, as well as the 11th Circuit, asking for fees, both against Ms. Peer and Mr. Sullivan. When Mr. Sullivan responded to both motions, he did not ever raise the argument that fees are unavailable under Section 1132 G against an attorney. We cited a number of cases in our brief, the Jinx case, the Lebon case, the Cashner case, that make reference to the point that you cannot bring up an argument for the first time in a Rule 60 motion. That is not an appropriate vehicle. If you had the opportunity to make the argument before judgment or an order is entered, you have to bring it up. Just as Mr. Sullivan could not have appealed an issue that he had not brought to the district court in advance of the judgment, he can't resuscitate that issue. Mr. Marcus, did he raise the issue in his motion to alter judgment? He did. But what the case law says is that you can't raise an issue for the first time on a Rule 60 motion. The motion has to address a matter that could not have been argued before entry of the judgment. Was he a party to the litigation, Mr. Marcus? Well, the motions for fees asked for fees against Mr. Sullivan and Ms. Peer. So at that point, he was a party in interest and he had the opportunity to respond to those issues. But while he represented Ms. Peer, how was he supposed to argue that the fees should be assessed against her instead of him? Well, he can argue that it shouldn't be assessed against either of them. He didn't argue that though, didn't he say that they shouldn't be assessed at all? He didn't. What he said is that they shouldn't be assessed against Ms. Peer and he never raised the argument that they can't be assessed against him under 1132G. Isn't that really a conflict which goes back to Judge Brasher's original question, which is I don't see how he is supposed to make an argument that could be contrary or in conflict with his client's position. How is it not proper once a judge does what the judge did in this case, then for Mr. Sullivan to say it's not appropriate for you to sanction me? Well, I think the focus of what you just said is once the judge did what she did. Well, what the judge did was grant a motion to dismiss and a motion for judgment on the pleadings as to the two separate counts that were brought in the second amended complaint after prolonged litigation on a mood issue. At that point, when we requested fees, we asked for them against Mr. Sullivan and Ms. Peer. If Mr. Sullivan wanted to make the argument that fees are not appropriate against either of them and they are particularly never available against an attorney under 1132G, that's an argument that he can make without putting himself in conflict. Well, Mr. Marcus, let's just go to the merits of the case rather than this procedural conundrum that you have now placed on the table. So why don't we talk about the merits? Why is Mr. Sullivan wrong? Why is he wrong? I'm not sure what you mean in that regard. Why do you believe that the statute in question allows for the district court to sanction a lawyer individually and not the party, the client? OK, well, let me start by answering that. We don't even need to reach that question because, as Judge Wilson, I'm asking you to answer the question. Certainly. The Amlong case that Mr. Sullivan cites and the cases that talk about the inability to assess fees against an attorney unless the statute expressly says so are civil rights cases. There's the Crescent City case, which is a case on 1447C regarding removal. But both of those scenarios relate to statutes that are very different than the ERISA statute. And as we discussed in our brief, the Amlong case, all cases relating to civil rights, they're very different. Civil rights cases when it relates to fees are very specific in the standard to be applied that fees are general. First off, it's a prevailing party statute, which ERISA is not. Second, there is a presumption in favor of awarding fees for plaintiffs and a presumption against it for awarding it against defendants. Again, that is not true of ERISA. Under ERISA, the case law is very clear that there is no such presumption that the court can, in its discretion, award fees to either party. Now, the statute does not talk about against whom those fees may be asserted. Let me ask you a question. If we just look at what the ordinary meaning is of the word party, does party not actually mean a litigant in the lawsuit? Does it mean an attorney? I think for the purpose of this, that's not a question that really applies because the ERISA statute doesn't talk about fees against a party. It talks about fees to a party, which is an important distinction. In the Roadway Express case, the Supreme Court case that Mr. Sullivan cites to and refers to, and that the Amlong case is reliant upon. The Supreme Court was very specific in pointing out that the civil rights statutes, the legislative history, talks about the intent to allow fees against a party. Now, against a party is specific to against a litigant, not against counsel. The ERISA legislative history does not have that discussion of the legislative intent to be against a party. It merely allows for fees to a party. Mr. Marcus, let me ask you a question. How did the court arrive at the sanction that it imposed? How did it calculate the amount? By initially, well, for the amount, it simply did a lodestar approach, looked at the hours, the reasonable rate. In the case of the fees that were awarded to Ms. Peer against Liberty. So there was no hearing. There was no hearing then, right? No, there was only briefing. So if a court wants to impose sanctions in an ERISA case without a hearing, it would use the ERISA statute. But if we accept your argument, there would be no need for a hearing. If the court imposed sanctions pursuant to the ERISA statute, if we interpret it as the way you interpret it, is that correct? Well, I don't believe that a hearing is actually required under the inherent authority of Section 1927. Only the opportunity to respond is required. That opportunity to respond was provided by the court. I'm reading Amlong, and I'm quoting, quote, an attorney threatened with sanctions under Section 1927 is entitled to a hearing, quote, quote. Well, unfortunately, that is not something that we briefed. I can tell you from my recent briefing in a different case that there is authority to state that what that means is that there must be the opportunity to be heard. Not that there must be a physical hearing where there is an in-person appearance. If the court wishes a supplemental briefing on that point, I'd be glad to comply. I guess my concern, as you're probably able to determine, is that the way I read ERISA, this ERISA statute, it's more of a compensation statute rather than a sanction statute. There are other avenues that are available to the district court to sanction a lawyer for unprofessional conduct. Well, the five-prong test that the court applies actually applies the same standards that are involved for the application of inherent authority or Section 1927. The very first of the five factors is whether there was any bad faith involved, which this court expressly held there was. And the case law, as cited in our brief, and in fact, as in Amlong and Durrett, both cited by Mr. Sullivan, talk about that that is an objective standard, not a subjective bad faith standard. So the objective standard is, would an attorney of reasonable ability know that the arguments they're making are without basis in law? Under your view of ERISA, under your view of the ERISA statute, could the district court sanction a witness and impose attorney's fees against a witness? I'll give you a more specific hypothetical. Let's say that the plaintiff hires a doctor and the doctor says that the plaintiff is fully disabled, but the doctor is just a liar and was lying. And so all the litigation arose out of this lie that the doctor told. And so at the end of the ERISA litigation, could the district court say, you know what, the doctor needs to pay the insurance company's attorney's fees? Well, the difficulty with that is that there are no witnesses in ERISA hearings and ERISA trials. All right, well, let's go. Let's give you another hypothetical then. So let's talk about, let's say that the person who works for the insurance company that denies whatever claim is made against the plan does it because it's in bad faith and he hates the person who's filed the claim or something like that. And so all the litigation arises because this person who works at the insurance company denied the claim in bad faith. Can the judge make that person at the insurance company pay the attorney's fees for the plaintiff? I don't know that they could hold the individual responsible, but certainly the insurance company could. Yeah, so why wouldn't they be able to hold the insurance company? Why wouldn't they be able to hold the individual responsible? Well, here the distinction is you're talking about what goes into a claim decision as opposed to what tactics were used in the litigation. And what the statute and the inherent authority and section 1927 really address is the question of whether the conduct in the litigation was vexatious. Whether the, and again, in the five prong test, they look to the bad faith. Okay, well, let me just make it worse where the person who works at the insurance company knows personally the plaintiff decided to deny this claim with no good faith basis. And then is deposed. Well, they're probably not deposed, but it's instrumental in making sure that the insurance company fully defends this bad faith denial that this person at the insurance company made happen. Well, let me simplify for you where I think you're going with this. And that is if I as counsel for liberty life assert affirmative defenses that I know to be improper. Yes, I believe that the court can assess fees against me for my conduct in the litigation for my relative bad faith for the five factors that the court analyzed which is part, part and parcel of the way. One determines what is whether fees can be assessed. And I would note that those five prongs address what the Supreme Court recognized as exceptions to the American rule. The. We cited in our brief that the Supreme Court recognizes three exceptions to the American rule. And those exceptions are expressly addressed by the five prong test, this court applied, and this court found expressly that all five prongs support an award of fees. I see my time is out. I would ask one more question. I have another question to go ahead, Judge Brashen. Well, so I have some concerns about your cross appeal because I'm worried that Miss Peer has not been represented, may not have received notice, didn't know what was going on. Let me address that. Our answer brief and cross appeal brief was served by email and posted and US Postal Service to Miss Peer. I received a phone call from an attorney in Fort Lauderdale against whom I've had a number of other Arisa cases, asking me about Miss Peer because she had consulted him for representation. He ultimately agreed to represent her relative to her unrelated claim for long term disability benefits, but expressly told me that he was not taking on representation relative to this cross appeal. So there's no question that I see we've lost Judge Lagoa. Yeah, we lost Judge Lagoa again. Excuse me, panel. Judge Lagoa is going to connect audio only for the remainder of court. Thank you. Judge Lagoa has joined audio only. Thank you. May I proceed? Yes. All right. Thank you. For the reasons that I just described, there's no question that Miss Peer was aware of these proceedings, was aware of the cross appeal, chose not to respond to it. And so there would not be grounds on that basis for not granting the cross appeal. I would note that on the cross appeal, though, there are two separate findings by the court in two separate provisions of the order that are subject to two separate standards of review. The first is that the defendant is entitled to its fees. That is subject to an abuse of discretion standard. The second is that Mr. Sullivan and not Miss Peer should pay those fees. That is subject to a de novo standard. If this court were to determine that Mr. Sullivan is correct and that under 1132 G, there is no basis for awarding fees and under the inherent authority and section 1927, there was insufficient notice or hearing. That would not alter the finding that Liberty Life is entitled to receive its fees. And at that point, the court's finding that it was going to exercise its discretion to award the fees against Mr. Sullivan, instead of against Miss Peer would be error and would either need to be reversed so that the fees are payable by Miss Peer, or at the very least, remanded for the district court to be able to look at its error relative to what it could do in terms of who would pay the fees. Who pays those fees and make a determination as to whether it's still believed that somebody ought to be responsible for those fees. Because after all, the court did expressly find that the defendant and the participants in the plan should not have to pay for plaintiffs litigation. Mr. Marcus, Liberty did decide to grant the waiver of premium to Peer. Is it possible that Liberty could have reversed that decision at some point in the future and decide that she was not totally disabled? That is always possible. It is it's possible that Miss Peer could have returned to work. That's why the whole issue about trying to resolve what's going to happen in the future was not right and didn't present an article three case in controversy. And this court has already ruled on that. It's the law of the case. All right. Thank you, Mr. Marcus and Mr. Sullivan. You've reserved some time for rebuttal. Thank you. Thank you. I appreciate it. In Wright versus Hannah Steel Corporation, this court stated that the appellate court will consider an issue not raised at the district court level if it involves a pure question of law. And if refusal to consider it would result in a miscarriage of justice, miscarriage of justice being defined by Black's Law Dictionary as an award against me. So you have the discretion to consider whatever you wish to consider. This is a pure question of law. I did argue, and I think that maybe this will answer some of your questions, Judge Wilson. On document 89 page 7 in my motion to alter the judgment, I specifically quoted the Supreme Court, which states that departures from the American rule require explicit statutory authority. And I quoted in Ray Crescent City, the Fourth Circuit, which says status as a non-party provides protection to the attorneys from liability for fees. Attorneys are outside the ambit of fee shifting provisions. I did want to say, too, on the preceding page, I actually argued the case in that same one that the ERISA fee shifting provision applies to parties and not to attorneys for parties. Quoting that case, I said ERISA does not provide for recovery of a fee award against the losing party's attorneys. The parties to be protected under ERISA are a specific class of parties that are named in 29 U.S.C. section 1001B. And ERISA's intent by Congress is to protect the plan participants and beneficiaries in seeking rights under their plans. There is no intent whatsoever to protect insurance companies. I think that's about all I would have to, unless there are further questions, Mr. I believe Mr. Marcus's comments didn't raise anything new that we hadn't heard before. And I wish you have some questions I would I would conclude. And I think we have your argument. Thank you, Mr. Marcus. And the court will be in recess for 10 minutes. Thank you. Thank you. Thank you.